UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>RAJNINDER JUTLA,<br><br>Defendant. | CASE NO. CR19-141-RSM<br><br>ORDER DENYING DEFENDANT'S MOTION TO SEVER |

## I. INTRODUCTION

This matter comes before the Court on Defendant Rajninder Jutla's Motion to Sever Counts 2, 5, 7-8, and 13-15 from the superseding indictment pursuant to Fed. R. Crim. P. 8(a) and 14. Dkt. #38. The Government opposes severance. Dkt. #39. The Court held oral argument on June 15, 2021. Having considered the Motion, the Government's Response, Defendant's Reply, parties' arguments at oral argument, and the remainder of the record, the Court DENIES Defendant's motion.

## II. BACKGROUND

Defendant Jutla is a licensed physician who operates pain clinics in Seattle, Washington and Portland, Oregon. Defendant is charged with offenses related to two alleged health care-related kickback schemes. These alleged schemes involved kickbacks paid by different

ORDER DENYING DEFENDANT'S MOTION TO SEVER – 1

companies in different cities for different drugs but requiring common conduct by Defendant, who would receive illegal payments in exchange for writing prescriptions or ordering lab tests without regard to her patients' medical necessity.

**A. Insys Kickback Scheme**

Insys Therapeutics, Inc. ("Insys") was a company headquartered in Arizona that manufactured a fentanyl-based drug called Subsys: a pain medication designed to be sprayed underneath the tongue. A potent opioid containing fentanyl, Subsys was approved by the U.S. Food and Drug Administration ("FDA") to treat sudden onset of pain in cancer patients. Dkt. #25 at ¶¶ 19-33. The high cost of Subsys required Defendant's patients to rely on private market and/or publicly funded insurance to afford their Subsys prescriptions. Insurers, in turn, imposed stringent requirements prior to authorization including (1) a prior cancer diagnosis; (2) the need to treat sudden, short-term pain; and (3) prior ineffective use or tolerance of other strong narcotic pain drugs. *Id.* at ¶ 35. Due to the difficulty of obtaining prior insurance authorization for Subsys, Insys established the Insys Reimbursement Center and solicited physicians for confidential patient information, which was used to compile a form and lobby insurers to authorize Subsys prescriptions. *Id.* at ¶¶ 37-41. In 2012, Insys developed the Insys Speaker Program, which was used as a compensation program for physicians who prescribed Subsys, Although the program recruited physicians who prescribed Subsys to make presentations to other health care professionals about the drug, these presentation opportunities were directly correlated with the volume of Subsys prescriptions written by the doctor. *Id.* at ¶¶ 44.

Defendant became a participant in the Insys speaker program in or around February 2012 and shortly thereafter began to prescribe Subsys. *Id.* at ¶¶ 45-59. Defendant and her office staff allegedly collaborated with Insys sales representatives and staff to ensure that patients' insurance

authorization forms included the required information. *Id.* at ¶¶ 60-70. That information was often false and misleading and failed to accurately reflect the patient's medical history or condition. Once authorization was secured, Insys was paid by the insurers and rewarded Defendant with kickbacks disguised as "speaker fees" for her presentations. Between November 2012 and June 2016, Insys paid Defendant approximately $100,000 for her participation in the scheme.

### B. NuMed Kickback Scheme

NuMed Care LLC ("NuMed") is a Florida-based company and ClinicalCorp LLC ("Clinical Corp"), a Nevada-based company with a Florida office, was the marketing arm of NuMed. *Id.* at ¶¶ 82-88. NuMed and ClinicalCorp allegedly conspired to pay doctors to write prescriptions for compounded pain creams. Compounded drugs are customized combinations of individual drugs prescribed by physicians after assessing a patient's diagnosis, condition and drug history, and are prescribed only after determining that commercially available drugs would not be appropriate for treatment. Compounded pain creams include many of the drugs prescribed directly for pain relief, presented in cream form for topical application and typically cost tens of thousands of dollars to refill. *Id.* at ¶¶ 72-78.

NuMed and ClinicalCorp allegedly conspired in two fraudulent kickback schemes: (1) a prescription harvesting scheme; and (2) a lab-testing scheme. In the prescription harvesting scheme, NuMed and Clinical Corp would pay doctors to write prescriptions for compounded pain creams, which were filled by "captive pharmacies," meaning pharmacies controlled by NuMed. The scheme involved a consulting arrangement wherein participating physicians were compensated as purported "Clinical Care Coordinators" to participate in purported data collection efforts and surveys. ClinicalCorp and NuMed would provide physicians with

ORDER DENYING DEFENDANT'S MOTION TO SEVER – 3

pre-printed prescription pads and listing pre-determined compounded pain cream formulations that would be transmitted to NuMed and forwarded to the captive pharmacies. *Id.* at ¶¶ 90-101. The physicians would then be compensated at an hourly rate for purported data collection and surveys as a disguise for direct payments for participation in the prescription harvesting scheme. Regarding the lab-testing scheme, NuMed and ClinicalCorp would pay doctors to order lab tests from a specific California-based laboratory in California for urine and genetic testing. *Id.* at ¶¶ 102-108. Compensation followed the same consulting model NuMed and ClinicalCorp used for the compounding pain creams.

Defendant became a Clinical Care Coordinator for NuMed in December 2014 and allegedly used NuMed's pre-printed prescription pads to write prescriptions for compounded pain creams. *Id.* at ¶ 109. In the spring of 2015, she allegedly took part in NuMed and ClinicalCorp's lab-testing scheme by ordering laboratory tests from NuMed's California lab and receiving kickback payments tied to the number of tests she ordered under the guise of "consulting services."

### III. DISCUSSION

**A. Legal Standard**

Rule 8(a) provides that an indictment may charge a defendant in separate counts with 2 or more offenses if the offenses charged are (1) of the same or similar character; (2) based on the same act or transaction; or (3) connected with or constitute parts of a common scheme or plan. Fed. R. Crim. P. 8(a). The rule "should be construed broadly in favor of initial joinder." *United States v. Golb*, 69 F.3d 1417, 1425 (9th Cir. 1995); *United States v. Ford*, 632 F.2d 1354, 1373 (9th Cir.), *cert. denied*, 450 U.S. 934, 101 S.Ct. 1399 (1981).

Even if joinder is permissible under Rule 8, "a party who feels prejudiced by joinder may move to sever pursuant to [Rule] 14." *United States v. Smith,* 795 F.2d 841, 850 (9th Cir. 1986), *cert. denied,* 481 U.S. 1032, 107 S.Ct. 1964, 95 L.Ed.2d 535 (1987). Rule 14 states, "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "Joinder is not prejudicial where all of the evidence of the separate count would [still] be admissible upon severance." *United States v. Prigge*, 830 F.3d 1094, 1098 (9th Cir. 2016) (internal citations omitted). To prevail on a motion to sever under Rule 14, the defendant must demonstrate that joinder "was so manifestly prejudicial that it outweighed the dominant concern with judicial economy and compelled exercise of the court's discretion to sever." *United States v. Armstrong*, 621 F.2d 951, 954 (9th Cir. 1980).

**B. Rule 8(a) Joinder**

When considering whether joinder is proper under Rule 8, courts look solely to the allegations in the indictment. *United States v. Jawara*, 474 F.3d 565, 572 (9th Cir. 2007) indictment. (citing *United States v. Terry,* 911 F.2d, 272, 276 (9th Cir. 1990)). Here, the Government argues that severance is not appropriate under Rule 8(a) on the basis that (1) Defendant's enrollment in the Insys speaker program and her entry into the NuMed-ClinicalCorp consulting agreement are part of a common scheme or plan; and (2) the Insys and NuMed schemes are "of the same or similar character." The Court will address each argument in turn.

1. Common Scheme or Plan

In considering whether separate counts are part of a "common scheme or plan," courts in the Ninth Circuit consider whether commission of one of the offenses "either depended upon . . .

ORDER DENYING DEFENDANT'S MOTION TO SEVER – 5

or necessarily led to the commission of the other" such that proof of one act either constituted or depended upon proof of the other. *Jawara*, 474 F.3d at 574 (quoting *United States v. Halper*, 590 F.2d 422. 429 (2d Cir. 1978) (internal quotations omitted)); *see also United States v. Anderson,* 642 F.2d 281, 284 (9th Cir. 1981) ("When the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate.") (internal citation omitted). In cases where courts found a common scheme or plan, such cases involved "a concrete connection between the offenses that goes beyond mere thematic similarity." *Id.* This includes cases where the alleged crimes took place within the same 24-hour period, *see United States v. Kinslow,* 860 F.2d 963, 965 (9th Cir.1988), or one crime flowed directly from the other. *See United States v. Whitworth,* 856 F.2d 1268, 1277 (9th Cir. 1988) (Espionage activity and tax evasion "resulted in large part from the necessity of concealing the illegal proceeds of that activity.").

While Defendant's alleged participation in both schemes fulfilled a broader goal of exploiting her existing patients with chronic pain to receive illegal kickbacks, the mere fact that both schemes shared the same ultimate purpose is insufficient to demonstrate a common scheme or plan. As in *Jawara*, the Court finds no direct connection between the acts other than Defendant's participation. Her participation in one scheme did not bolster or assist with her participation in the other scheme, nor did one conspiracy flow from the other. The Government has a stronger argument here than in *Jawara*, where the defendant's separate efforts to avoid deportation—initially through document fraud and then through marriage fraud—lacked any connection. Here, in contrast, Defendant's alleged efforts to transmit false or misleading information to insurance companies occurred within the same time period from Defendant's offices in Seattle and Portland, and may involve common evidence with respect to Defendant's established pain practice and the patients from which she solicited information to receive

ORDER DENYING DEFENDANT'S MOTION TO SEVER – 6

kickbacks. However, the Court finds that the thematic similarity between the two schemes, absent any concrete connection between them, is insufficient to satisfy this prong. *See United States v. Tillisy*, No. CR13-310RSL, 2014 WL 6646475, at *2 (W.D. Wash. Nov. 17, 2014), *aff'd*, 697 F. App'x 910 (9th Cir. 2017) (finding no common plan between defendant's alleged attempts to escape prison and to obtain confidential phone records, both through impersonating federal officers).

2. "Same or Similar Character"

The Ninth Circuit has acknowledged that the "same or similar character" prong of Rule 8(a) is "the most amorphous and controversial of the three grounds for joinder." *Jawara*, 474 F.3d at 575. In identifying the relevant factors to consider under this prong, the Ninth Circuit has considered (a) the elements of the statutory offenses; (b) the temporal proximity of the acts, (c) the likelihood and extent of evidentiary overlap; (d) the physical location of the acts; (e) the modus operandi of the crimes; and (f) the identity of the victims. *Id.* at 578. The weight accorded to each factor depends on "the specific context of the case and the allegations in the indictment." *Id.*

Applying this inquiry here, the Court finds that several factors favor joinder. Defendant does not dispute that the elements of both charged schemes are identical. *See* Dkt. #25 at ¶¶ 45-46 (Insys scheme); ¶¶ 89-90 (NuMed scheme). The time frame of Defendant's alleged participation in the schemes also overlapped temporally, with participation in the Insys scheme spanning from 2012 until October 2016, and participation in the NuMed scheme taking place within that time frame, from late 2014 until mid-2015. Furthermore, the victims were many of the same private and publicly-funded insurance providers. Regarding physical location, the Court infers from the indictment that Defendant was in the same locations—her Seattle and

ORDER DENYING DEFENDANT'S MOTION TO SEVER – 7

Portland offices—when she committed many of the alleged acts, including signing and submitting false or misleading information and prescribing patients medication or ordering lab tests without regard to medical necessity. To the extent Defendant relies on *United States v. Saks* for the proposition that office location is "irrelevant" when considering joinder of fraud claims, *Saks* merely supports the proposition that location is a neutral factor and does not weigh against joinder. *See* No. CR 08-0668 CBM, 2009 WL 3416217 (C.D. Cal. Oct. 20, 2009)).

The modus operandi for the acts were likewise substantially similar, as both required Defendant, a pain specialist, to rely on her established patient population to identify potential qualifying prescriptions or lab tests, *see* Dkt. #25 at ¶¶ 47, 79, 84, to submit misleading or fraudulent claims for such patients regardless of medical necessity, *id.* at ¶¶ 67, 90, 118, and to receive kickbacks under the guise of sham professional engagements such as speaker presentations or consulting, *see id.* at ¶¶ 52, 111, 116. In arguing that the alleged schemes did not share any "signature" elements, Defendant relies on an admissibility analysis under Fed. R. Evid. 404(b) where the Ninth Circuit concluded that "[t]he robbery at issue did not involve any 'peculiar, unique, or bizarre' conduct such that it "was similar to most bank robberies." *United States v. Perkins*, 937 F.2d 1397, 1401 (9th Cir. 1991). In contrast to the robberies in *Perkins*, the conduct alleged here—enrolling in sham medical professional programs as a means to receive illegal payments, drawing from a patient base with chronic pain histories, and supplying false or misleading information to obtain insurance authorization of high-priced pain medications or lab tests related to those medications—comprise sufficiently unique conduct that cannot be so common that it "says nothing about who committed the instant offense." *Id.*; *cf. United States v. Luna,* 21 F.3d 874, 880–81 (9th Cir. 1994) (finding characteristics of four robberies, such as use

of guns, masks, gloves, bags, loud entry, use of profanity and abuse of bank employees, too generic to be modus operandi evidence).

Finally, the Court finds that the likelihood of evidentiary overlap favors joinder. Although Defendant identifies a number of witnesses that can only testify as to one scheme but not the other, the Court also considers that the allegations pertain to the same existing patient population such that some of Defendant's patients may be called to testify as to both schemes. Furthermore, besides the likelihood of overlapping patients, the indictment references the involvement of Defendant's office staff as to both schemes such that evidence and witnesses may likely overlap. *See* Dkt. #25 at ¶ 65 (Defendant and her office staff included historical cancer diagnoses and codes on opt-in forms to obtain prior authorization for Subsys prescriptions); *see also id.* at ¶ 109 (referencing Defendant's nurse practitioner in relation to NuMed scheme with respect to ordering lab tests and submitting prescriptions for compounded medications). While Defendant faults the Government for failing to specifically identify the evidence or witnesses that overlap between the two schemes, *see* Dkt. #40 at 5, *Jawara* merely requires consideration of the "*likelihood* of evidentiary overlap . . . to the extent that they can be gleaned from the indictment." *Jawara*, 474 F.3d at 578 (emphasis added). Based on the allegations of substantially similar fraud schemes implicating the same patient base and the same office staff during overlapping time frames, the Court finds that such a likelihood is present here.

Defendant also relies on the decision in *Sax* in opposing joinder based on an overlapping patient population in separate fraud schemes. *Sax* concluded that the possibility of defendant's patients testifying as to both fraud schemes was insufficient to satisfy the "same or similar" prong under Rule 8(a), given that the schemes' overlapping time period and overlapping patients were "where the similarities end." *Saks*, 2009 WL 3416217, at *4 (finding the victims "complete

ORDER DENYING DEFENDANT'S MOTION TO SEVER – 9

distinct" and the elements of the crimes "more dissimilar than alike."). Here, in contrast, the Court has already concluded that the elements of the alleged fraud schemes are identical, involve many of the same victims, and have very similar modus operandi. For that reason, *Sax* is distinguishable from the allegations at issue here.

In light of these considerations, the Court finds that the *Jawara* factors weigh in favor of joinder under Rule 8(a) based on the "same or similar character" of the two alleged fraud schemes.

### C. Prejudice under Rule 14(a)

Having determined that joinder is warranted under Fed. R. Crim. 8(a), the Court turns to whether keeping the counts joined is so "manifestly prejudicial" so as to outweigh concerns of judicial economy. *Tillisy*, 2014 WL 6646475, at *3 (citing *United States v. Lopez,* 477 F.3d 1110, 1116 (9th Cir. 2007)). Factors the Court may consider include "whether strong evidence supports either set of counts (such that an unsupported charge is not bolstered by evidence against defendant relating to other charges), whether the evidence supporting one set of counts would be admissible in a separate trial concerning the other, and whether jurors would have difficulty keeping the various counts and their supporting evidence separate in their minds." *Id.* (citing *Jawara,* 474 F.3d at 577, 579–81); *United States v. Johnson,* 820 F.2d 1065, 1070 (9th Cir. 1987). Joinder of counts is the rule, not the exception. *Whitworth,* 856 F.2d 1268, 1278 (9th Cir. 1988) (citation omitted).

Defendant does not dispute the first prong as to the strength of the evidence. Instead, Defendant contends that much of the evidence to prove one of the schemes would be inadmissible to prove the other, thereby prejudicing Defendant at trial. Dkt. #48 at 12. Defendant further argues that because so much of the evidence relating to one set of counts would be inadmissible,

ORDER DENYING DEFENDANT'S MOTION TO SEVER – 10

a confused jury would be more inclined to find Defendant guilty based on propensity reasoning. *Id.* at 13.

As an initial matter, the Court is not persuaded by Defendant's conclusory argument that the two schemes operated in "such different ways, through different entities" such that evidence as to one scheme would be inadmissible as evidence that Defendant had a propensity for wrongdoing. *See* Fed. R. Evid. 404(b)(1). Instead, given this Court's findings as to common modus operandi between the two counts, there is sufficient likelihood that evidence admitted on one count would be admissible in a separate trial under Fed. R. Evid. 404(b) to establish motive, opportunity, intent, preparation, plan, knowledge, absence of mistake, or lack of accident as it relates to the other scheme. *See* Fed. R. Evid. 404(b)(2); *see also Johnson,* 820 F.2d at 1070 (finding joinder not prejudicial where under 404(b), evidence of both robberies would have been cross-admissible on the issue of identity and modus operandi). Nor does the Court find that the fraud schemes alleged in this matter are so complex such that proper jury instructions could not mitigate the risk of improper propensity reasoning. *See Jawara*, 474 at 580 (finding jury instruction to treat charges separately militated against finding of prejudice).

For that reason, the Court finds that keeping the counts joined is not so manifestly prejudicial to Defendant that severance is warranted under Rule 14.

## IV. CONCLUSION

For the reasons set forth above, the Court DENIES Defendant's motion to sever counts related to the Insys scheme from those related to the NuMed scheme.

IT IS SO ORDERED.

ORDER DENYING DEFENDANT'S MOTION TO SEVER – 11

DATED this 21st day of June, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER DENYING DEFENDANT'S MOTION TO SEVER – 12