The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, Plaintiff, v. RAJNINDER JUTLA, Defendant. | NO. CR19-141RSM **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO EXCISE PARAGRAPH OF PLEA AGREEMENT** |
|---|---|

Having unsuccessfully moved to withdraw her plea, Jutla now seeks to "excise" a portion of the plea agreement's statement of facts. Jutla repackages the arguments in her failed to motion to withdraw that she did not sign certain prescriptions, despite swearing under oath during her plea colloquy that she in fact did so. What Jutla really seeks to do is to renegotiate the agreed statement of facts on the eve of sentencing. Jutla identifies no statute, rule, or case allowing such relief, and there is in fact none. On top of everything else, the now disputed portion of the statement of facts has minimal relevance. Although Jutla now disputes that she did not *sign* certain prescriptions for a particular patient, there is no dispute that Jutla in fact prescribed the medication to the patient, and did so as part of a program where she accepted kickbacks in exchange for prescriptions written. Her motion should be denied and the case should proceed to sentencing as scheduled.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**BACKGROUND**

Jutla pleaded guilty to Count 11 of the Superseding Indictment, which charged health care fraud. *See* Exhibit A ¶ 1(a). Jutla admitted to engaging in a scheme to defraud insurance companies in order to convince them to cover the costs of Subsys, a fentanyl-based sublingual spray. *Id.* ¶ 9(c). The FDA had approved Subsys to treat breakthrough cancer. *Id.* Jutla was routinely prescribing Subsys to patients who were not suffering from cancer pain. In order to maximize the chances that insurance companies would cover Subsys in these circumstances, she intentionally helped to submit forms to the insurance companies that made it falsely appear that her patients were suffering from cancer pain. *Id.* Count 11 related to paperwork that was submitted to an insurance company regarding H.H., one of her patients. *Id.* ¶ 9(d).

The statement of facts went on to document two other categories of misconduct that Jutla committed. First, the statement of facts documented that Jutla took kickbacks from Insys, the company that sold Subsys, in exchange for prescribing the drug. *Id.* ¶ 9(e). Insys maintained a speaker program in which doctors were ostensibly paid to educate other medical professionals about Subsys. *Id.* In reality, Insys tied the number of speaker programs to the number of prescriptions that the doctor wrote. *Id.* Jutla admitted to participating in this program with at least reckless indifference to the fact that her payments were tied to the number of Subsys prescriptions that she wrote. *Id.*

Second, Jutla admitted to participating in an illegal scheme involving compound cream and testing that was run by Clinical Corp., a company unrelated to Insys. *Id.* ¶¶ 9(g)-(j). The statement of facts outlined:

//

//

//



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

f. The second scheme involved NuMedCare, LLC ("NuMed"), a business that owned or had arrangements with pharmacies that prepared certain compound medication creams. A compound medication is prepared by a licensed pharmacist and/or a licensed physician who combines, mixes, or alters ingredients of a drug to create a medication tailored to fit the unique needs of an individual patient. At the time of the scheme in this case, certain insurance companies, namely TRICARE, a federal health care program, reimbursed pharmacies at a very high rate for the preparation and dispensation of compound medications.

g. ClinicalCorp LLC, which operated out of Boca Raton, Florida, was part of NuMed. ClinicalCorp paid kickbacks to physicians if the physicians prescribed certain compound medication creams. In an attempt to disguise the nature of the kickbacks, ClinicalCorp purported to hire physicians into a sham research study. Physicians were paid not for their research, but rather based on the number of compound cream prescriptions that they wrote that were fulfilled by pharmacies owned by or affiliated with NuMed. Multiple employees who were part of ClinicalCorp and NuMed have pleaded guilty and admitted their involvement in this scheme.

h. In late 2014, an individual who had a preexisting relationship with JUTLA recruited her to the compounded cream "study." She agreed to participate in the "study," and payments were made to her business, Mind Your Body Clinic PLLC. In February 2015, ClinicalCorp terminated JUTLA's participation in the program because she had not been writing a sufficient number of compound cream prescriptions.

//

//

//



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

> However, JUTLA was allowed back in the program and she sent in more compound cream prescriptions through the purported research study.
>
> i. On March 31, 2015, Dr. Jutla wrote a prescription for patient J.F. for compounded cream medication FFCGL, listing three refills with the date of March 2, 2015, crossed out and the date of March 31, 2015, hand-written. Patient J.F. had previously reported that the compounded cream was ineffective and that J.F. did not want the product anymore. The March 31, 2015, prescription was written based on false information and pretenses. Due to the false statement, the prescription was filled by Express Scripts and paid for by a health care benefit program.
>
> j. Later in 2015, ClinicalCorp began paying physicians, including JUTLA, amounts that were tied to the number of urine and genetic tests that were conducted by laboratories that were affiliated with the company. All told, Mind Your Body Clinic received $37,381 in payments over 8 months under the scheme, and TRICARE and other insurers paid Clinical Corps and its affiliates $348,905.99 in reimbursements for compound prescription creams that she prescribed and urine and genetic tests that she ordered. At the time that JUTLA was participating in the scheme, she acted with at least reckless indifference to the fact that she was being paid based on the number of prescriptions that she wrote, as well as the urine and genetic tests that she directed to the company's affiliated laboratory.

*Id.*

Well after her plea was taken and accepted, Jutla suddenly claimed that she did not write the prescription to J.F. that is referenced in the first sentence of paragraph (i) above. Jutla's counsel has consulted with a handwriting expert who apparently is prepared to testify that the signature is "probably not" Jutla's signature.

Jutla subsequently moved to withdraw from her plea on the ground that she did not sign the prescriptions. On August 18, 2023, the Court denied the motion because the



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

prescriptions were "unrelated to the charge to which Defendant pleaded guilty. Dkt. 98 at 3. Jutla had pleaded guilty to a charge related to Subsys, a powerful opiate marketed by Insys. The prescriptions that Jutla took issue with related to compound medication cream marketed by an unrelated company. The facts related to this company were included to give the Court a full picture of the scope of Jutla's conduct, even though the conduct did not directly relate to the charge to which she pleaded guilty.

**ARGUMENT**

Jutla's now seeks to "excise" all of paragraph 8(i). Jutla cites only *United States v. Hammond*, 742 F.3d 880 (9th Cir. 2014) as authority. In that case, the jury returned a partial verdict, returning guilty and not-guilty verdicts with respect to certain counts. As the jury deliberated on the remaining counts, the parties reached an agreement. In essence, the government agreed to recommend that the sentences as to one defendant run concurrently and that another defendant be allowed to remain on bond pending sentencing. At sentencing, the court sentenced both defendants below the mandatory minimum. The government appealed. On appeal, the defendants argued that the government waived its right to appeal because the defense had made statements during the plea colloquy that the defendants wanted finality to the case. The Ninth Circuit held that these statements did not amount to an agreement by the parties that neither could appeal the sentences. *Id.* at 883. The defense also argued that the Court should add the waiver provision out of fairness because the government remained silent when defense counsel remarked that the deal provided finality. *Id.* The Ninth Circuit rejected this argument, noting that a court cannot remake a plea agreement or imply terms into one. *Id.* Because the parties had not agreed to an appeal waiver in the plea agreement, nothing precluded the government from appealing the sentences. *Id.*

*Hammond* not only provides no support for Jutla, it cuts strongly the other way. Jutla, like the defendants in *Hammond*, is seeking to "remake" the plea agreement, *i.e.*, to re-negotiate the statement of facts that she agreed to and was accepted by the Court.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Once a plea is accepted, its terms cannot be unilaterally changed. *See United States v. Pluta*, 144 F.3d 968, 974 (6th Cir. 1998) (denying motion to withdraw plea, noting that the defendant impermissibly wanted to "to renegotiate because [he] wanted to strike the statement of facts"). In sum, the remedy that Jutla seeks does not exist in the law.

It bears emphasis how little this all matters. As the government outlined in its opposition to the motion to withdraw, there can be no dispute that Jutla prescribed the cream to the patient. Jutla's notes reflect that and the patient told investigators that Jutla personally pushed her to take it. Dkt. 96 at 4. Moreover, Jutla is not disputing the portion of the statement of facts where she admits that she received kickbacks from the compound cream company for prescribing the cream. Thus, the question of who *signed* the prescriptions is of little relevance. Although the Court of course has the final say on this question, the government would not think that this fact would make any material difference in the sentence to be imposed.

In sum, Jutla litigated and lost her request to withdraw her plea. The remedy she now seeks is unavailable to her. The Court should deny the motion and proceed to sentencing.

DATED this 6th day of September, 2023.

Respectfully submitted,

TESSA M. GORMAN
Acting United States Attorney

*s/ Thomas M. Woods*

THOMAS M. WOODS
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
Fax: 206-553-4073
E-mail: Thomas.Woods2@usdoj.gov